## LEWIS LOWE v. THE STATE.

1. CRIMINAL LAW. *Burglary with intent to rob.* Where defendant was indicted for burglary, with intent to commit robbery, proof showing the breaking and entry by violence, accompanied by a loud noise in the room where prosecutor and wife lived, indicates an attempt to rob rather than to commit a simple larceny.

2. SAME. *Evidence.* Testimony showing that defendant and a stranger, whom the proof shows was with defendant in committing the burglary, were together several weeks previously in a neighboring town, and that pistols were at that time stolen from the witness, and the pistol found at the place of the burglary, was of the same make, and like the one stolen from witness, and that defendant was then going under an assumed name: *Held,* competent.

### FROM MONTGOMERY.

Appeal in error from the Criminal Court of Montgomery county.    C. W. TYLER, J.

W. A. QUARLES for Lowe.

ATTORNEY-GENERAL LEA for the State.

DEADERICK, C. J., delivered the opinion of the court.

Lowe was convicted in the criminal court of Montgomery county, the indictment charging him with breaking and entering the mansion house of J. J. Garrett, in the night time, with intent to take from the person of said Garrett his personal goods by violence and putting him in fear.

This indictment sufficiently charges a breaking and entry with intent to commit robbery.  Robbery is the

felonious taking of property from the person of another by violence, or by putting him in fear. But the allegation that they were taken from his person will be proved by showing they were taken in his presence: 3 Gr. Ev., sec. 228.

It is objected that the witness, Staton, who was the only witness before the grand jury, was also the officer having charge of the jury during the trial. While the name of the officer and the witness was the same, it does not affirmatively appear that the officer and witness were in fact the same person. If it did, we are not prepared to say that that fact would vitiate the verdict. The officer having charge of the jury is selected by the court, and is specially sworn as to his duties in that capacity, and it cannot be presumed that he disregarded his oath and the instructions of the court.

When the testimony on the trial was concluded, defendant asked the court to exclude the testimony as to the name he bore in Kentucky; and entered also a general objection "to the testimony of R. M. Hester." Both motions were overruled.

It appears from the testimony of Garrett, the prosecutor, that about the middle of November, 1883, he and his wife had gone to bed about ten o'clock at night, and after falling asleep were startled by the crashing in of a window opening from a porch into their bed-room. Garrett ran into a hall, got his gun, and on returning to his room saw some one coming in at the window, and immediately fired at the person, and about the same time some one in the room

fired on him, shooting him through the upper part of the left lung. A struggle ensued, the wife going to the assistance of her husband, and the person who had shot him escaped through the window, the lower sash of which had been broken out of the window.

It was very dark, and Garrett could not tell whether the man who shot him was white or black. Neighbors came in, and it was found that in the struggle Garrett's assailant had dropped and left his hat and his pistol; and in the yard, a few feet from the porch, a white man was discovered dead, shot in the neck. He was a stranger, with a 32-calibre Smith & Wesson pistol, a hat, and a set of burglar's tools in his pocket. On the floor of the room in which the struggle had taken place, an American Bull Dog pistol, 38-calibre, and a hat were found, one chamber of the pistol being empty; three clubs and a hat were found on the porch near the broken window. The three hats and two pistols were exhibited, identified and described by the witness upon the trial. Garrett lived two miles from Clarksville, and half a mile from the village of New Providence, and defendant lived in New Providence.

R. M. Hester testified that he lived in Lafayette, Kentucky, fifteen miles from New Providence, and about a month before the breaking into Garrett's house, he saw defendant and the man killed at Garrett's together in that place. He left his store about dark, and soon returned and saw defendant standing at his door. He went in, defendant also. He asked defendant several times what he wanted, and he made

no reply, but walked to the back end of the house. Witness finally told defendant to go out, and then he asked for a nickel's worth of tobacco, which he got. Next morning witness found his store had been broken open, and some pistols were missing. Amongst them was one American Bull Dog pistol (not much used in his section) of 38 caliber. The bull dog pistol found in Garrett's room was shown him, and he said it was exactly like the one taken from his store; it had no marks by which he could identify it otherwise than by its general appearance and make, but he added, it has been worn some, and is the same in every respect.

Other witnesses show that the strange white man, who was killed by Garrett, and defendant were seen together repeatedly on the road and at a grocery in the neighborhood of Garrett from three weeks up to a day or two before the burglary; that they wore small, well-worn hats, like those exhibited on the trial, one of which had a greenish tinge, and was worn by defendant, and found in the pocket of the stranger at Garrett's.

It also appears that each had a pistol like those found, and that defendant had the Bull Dog, and desiring to pawn it, a witness examined it carefully, being the only one of the kind he had ever seen, and says the pistol exhibited is the same defendant had, or exactly similar. It is also shown that although defendant wore the hat with a greenish tinge up to a day or two before the burglary and when last seen before that night, the next day he wore a

straw hat, and left that night for Kentucky, where he was arrested in a village remote from the railroad and river, and was known and called by a different name from his true name.

These facts and coincidences are of a character that fully sustain the verdict of the jury.

The evidence of Hester was admissible as showing the association of the stranger and defendant about four weeks before the burglary, and that his pistols were missing, and his identification of one of them as far as he was able. Nor was there any error in proving that defendant had changed his name.

It is argued that the indictment is for a burglary with intent to rob, and the proof should show this intent. Although robbery includes larceny, we think the proof does show an intent to rob rather than to commit a simple larceny.

The inmates of the house were asleep, and no one upon the premises but Garrett and wife, except a colored female servant in a cabin in the yard in the rear of the house. The entry was accomplished by violence and accompanied by loud noise, which waked the sleepers, and we think the object of the burglars was to intimidate Garrett and rob him.

Fortunately he had at hand the means and presence of mind to resist and defeat the object of his assailants, although himself severely wounded in the conflict. All the facts point unmistakably to defendant as the party who entered the room through the window.

We are satisfied the verdict of the jury is sustained by the evidence, and that the judgment should be affirmed.